[Civ. No. 38394. Second Dist., Div. Five. Feb. 24, 1972.]

CHARLEEN JO HILL, Cross-complainant and Respondent, v. HORACE H. HILL, SR., et al., Cross-defendants and Appellants.

**COUNSEL**

Frederik W. Chel for Cross-defendants and Appellants.

Kenneth S. Lawson for Cross-complainant and Respondent.

**OPINION**

**STEPHENS, J.**—This action was commenced by the Prudential Insurance Company of America by its complaint in interpleader against the natural parents of decedent (the appellants here) and against the legal

widow of decedent (the respondent). Prudential's complaint alleged the existence of a Servicemen's Group Life Insurance Policy upon the life of decedent, acknowledged the amount owing thereunder, and requested the court to order defendants (the appellants and respondent here), who had all made claim to the proceeds, to litigate their claims. The appellants and the respondent both filed answers and cross-complaints, claiming the proceeds under said policy. The trial court granted a summary judgment on the widow's motion, and ordered the proceeds of the policy be paid to her. The parents of decedent appeal.

Decedent entered the military service in September 1965, and was honorably discharged in September 1968. After entering the service, and on September 29, 1965, Prudential issued its group policy No. G-32000 to decedent in accordance with the Servicemen's Group Life Insurance Act of 1965 which provided $10,000 insurance benefits. Decedent married respondent on March 11, 1966. On November 16, 1967, decedent executed VA Form 29-8286 ("Servicemen's Group Life Insurance Election") in which he "CANCEL[LED] PRIOR DESIGNATION [of beneficiary]." Decedent's prior designation of beneficiary is not in evidence since, according to Prudential, "it would in the normal course have been destroyed" when decedent cancelled his prior designation. However, by the terms of VA Form 29-8286, when decedent executed that form on November 16, 1967, which was subsequent to the date of his marriage, he thereby elected to make his wife the beneficiary.[1] On October 17, 1968, decedent commenced an action for divorce, which action was still pending on the date of his death. On October 28, 1968, approximately five weeks prior to the date of his death, under the conversion clause of the Servicemen's Group Life Insurance Act, decedent properly executed and sent to John Hancock Insurance Company an application for insurance designating his mother as beneficiary, or, if she predeceased decedent, then his father. At the time of decedent's death, the John Hancock Insurance Company had not

---

[1] "Do not complete this form unless you wish to change the automatic features of the Servicemen's Group Life Insurance.

"The automatic features provide $10,000 life insurance . . . to your survivor(s) in the following order:

"1. Widow or widower; if none, it is payable to

"2. Child or children . . .; if none, it is payable to . . .

"3. Parent(s) in equal shares . . ."

"DESIGNATION OF BENEFICIARY

". . . . . . . . . . . .

"Cancellation of a prior Designation of Beneficiary may be effected without naming a new beneficiary by executing a new VA Form 29-8286 and inserting in the space provided for the name of the beneficiary, the words, "Cancel Prior Designation." The effect of this will be to have the payment made in accordance with the automatic features above."

issued its policy. The Prudential policy would have expired a few days after decedent's death, as said policy was in effect under the Servicemen's Group Life Insurance Act for a period of 120 days from the date of decedent's discharge from the uniformed services.

The sole issue on appeal is posed in respondent's brief: "Did the trial court err in holding, as a matter of law, that a member of the Armed Forces cannot effect a valid change of beneficiary on an insurance policy issued under the Servicemen's Group Life Insurance Act (38 U.S.C. § 765 et seq.) except through the use of the designated form filed with the Uniformed Services, even though the serviceman intended to change beneficiaries and executed and submitted forms to effectuate such intent?"

In determining this issue, we are confronted with disturbing facts. As the trial court said in its memorandum opinion in favor of respondent: "The court reaches this conclusion reluctantly because the equities are entirely with the [parents]. Such equities were obviously in the mind of the Georgia Court in Davenport v. Servicemen's Group Life Insurance Co., 168 SE 2d 621 . . . . Such equities are also behind the former rule that the courts will do everything in their power to adopt a liberal policy favoring beneficiary changes, e.g., Stribling v. U.S. (8 Cir. 1969) 419 Fed. 2d 1350. It clearly also used to be the law that in order for a serviceman to change beneficiaries, only two requirements must be met: The serviceman must have intended to change beneficiaries and must have manifested that intent by an affirmative and overt act. Behrens v. U.S., 299 Fed. 2d 662, 9th Cir. (1962). Under the law relating to the former National Service Life Insurance, the intent of the serviceman was the key factor. If this Court could apply that law, it would hold in favor of the parents of decedent." However, like the trial court, we cannot escape the result compelled by the rationale of *Stribling*,[2] *supra*.

The pertinent portion of the Servicemen's Group Life Insurance Act (38 U.S.C. § 770(a)) relating to the designation of beneficiaries provides: "(a) Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence: First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received in the uniformed services prior to such death; . . . ." Appellants would have us adopt what has become known as the "liberal policy," rather than a "strict" construction of the statutory lan-

---

[2]There can be no doubt that the federal cases are strong authority, if not compelling, in the instant case.

guage. The liberal policy was adopted over the years in a line of decisions relative to the National Service Life Insurance Act of 1940 (38 U.S.C. § 701 et seq.), the United States Government Life Insurance Act (38 U.S.C. § 740 et seq.), and the regulations promulgated pursuant thereto. That "liberal policy" effectuated a change of beneficiary upon proof of only two conditions: First, that the serviceman intended to change the beneficiary of his particular policy, and second, that he performed some overt act directed toward accomplishing that end.[3] The argument in support of the liberal policy is that Congress, being aware of the judicial interpretation of existing servicemen's life insurance acts, did not intend to alter that policy when the Servicemen's Group Life Insurance Act was enacted.

When seeking legislative intent as to a statute, it is useful to consider language and legislative construction of another statute enacted for a similar purpose and containing similar language, even though not strictly in pari materia with the one under consideration. (See *Overstreet* v. *North Shore Corp.* (1943) 318 U.S. 125, 131-132 [87 L.Ed. 656, 662-663, 63 S.Ct. 494].)[4]

The relevant provisions of the act involved here were modeled after the provisions of the Federal Employee's Group Life Insurance Act of 1954 (Pub. L. No. 598, ch. 752, 68 Stat. 736 et seq., as amended 5 U.S.C. § 8701 et seq.). Both provide automatic insurance coverage for persons within a particular group desired to be protected, absent individual disavowal of the benefit. Each differs from prior government-sponsored similar programs by providing that *private* insurance companies are to provide the coverage. In each, the designation of beneficiary provisions within the acts are virtually identical, and each requires that such designation be in writing and received "in the employing office" or "in the uniformed services." Prior to 1967, the Federal Employee's Group Life Insurance Act (5 U.S.C. § 8705(a)) provided in relevant part:

"The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the

[3]See Annotation, 2 A.L.R.2d 489 et seq. for collection of cases. The leading cases supporting this rule are: *Behrens* v. *United States* (9th Cir. 1962) 299 F.2d 662; *Aguilar* v. *United States* (9th Cir. 1955) 226 F.2d 414; and *Kendig* v. *Kendig* (9th Cir. 1948) 170 F.2d 750, all from the 9th Circuit.)

[4]The rule is stated in 3 Sutherland, Statutes and Construction (3d ed. 1943) section 6102 at page 159: "By referring to other similar legislation the court is able to learn the purpose and course of legislation in general, and by transposing the clear intent expressed in one or several statutes to a similar statute of doubtful meaning, the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and logical system of law. [Fn. omitted.]"

establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries designated by the employee in a writing received in the employing office before death." This second paragraph above was amended in 1967 to read as follows (the amended portion is underscored): "First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office . . . . For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect." The Senate Report[5] on the amendment stated it was "To clarify Congress's intent . . . ." The amendment was to negate the decision of *Sears* v. *Austin* (9th Cir. 1961) 292 F.2d 690, which had construed the "prior 1967" phraseology (as quoted above) in the manner termed the "liberal policy."[6] The Senate Report further stated: "[T]he precedent established in [Sears] could, if generally followed, result in administrative difficulties for the Civil Service Commission and the insurance companies and, more important, seriously delay paying insurance benefits to survivors of Federal employees." This identical concern is equally applicable to the private insurance companies, such as Prudential here, under the Servicemen's Group Life Insurance Act. It cannot be argued that the 1967 amendment was for any purpose other than to require a "strict" construction of that statute. The similarity of the Federal Employee's Group Life Insurance Act to the Servicemen's Group Life Insurance Act, as we have already explained, requires that the same strict construction be applied to the latter act under the Congressional declaration of what it intended the original language of the Federal Employee's Life Insurance Act to mean, even though a like amendment to the Servicemen's Group Life Insurance Act was apparently deemed unnecessary.[7] In the Federal Employee's Group Life Insurance Act, Congress made certain its intent to have the provisions for designation of beneficiary strictly construed. The amendment there was not to change what it had said, but rather to eliminate any construction of its words not in conformity with its avowed intent. As we have noted, the language used in the Federal Employee's Group Insurance Act before amendment and the language of the Servicemen's Group Life Insurance

---

[5]S.Rep. No. 1064 to H.R. 432, 2 U.S. Code Cong. & Admin. News, 89th Cong., 2d Sess. 2070, 2071 (1966).

[6]In *Sears,* the court allowed a beneficiary designated in the insured's holographic will to recover the insurance proceeds even though the insured had not previously designated a beneficiary, and his will had not been filed in his employing office before death.

[7]Research by counsel for both parties as well as our own has uncovered no judicial declaration upon that subject relative to the Servicemen's Group Life Insurance Act.

Act are identical. It would be unreasonable to conclude that, in the face of the declaration of intent subsequently made in the Federal Employee's Act, the Congress in fact intended a different construction of the statute before us.

As we have heretofore stated, the effect of decedent's cancellation of prior designation of beneficiary did in fact *designate* the intended beneficiary of his Servicemen's insurance policy in the order of priority designated upon the form required to be filed with the uniformed services. At the time he contracted for the Hancock policy, for whatever reason he may have had, and obviously with no expectation by him that he would not outlive the term of the Servicemen's policy, he chose not to file a change of beneficiary in the manner specfiied by the act, and, in the light of his having once before filed such a document, presumably knew what was required of him.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 19, 1972.